UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

ROSEMARY URBANO-SPENCER,

      Plaintiff,                            Case No. 05-73064

v.                                        HON. GEORGE CARAM STEEH

STARFISH FAMILY SERVICES, INC.
a Michigan Nonprofit Corporation,

      Defendant

_____/

## ORDER AND OPINION GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT (DOCUMENT # 14)

### INTRODUCTION

In this litigation, plaintiff Rosemary Urbano-Spencer claims that her former employer, defendant Starfish Family Services, Inc., terminated her in violation of section 210 of the Employee Retirement Income Security Act, 29 U.S.C. § 1140. Now before the court is defendant's motion for summary judgment. Because the court finds plaintiff has not established her *prima facie* case of retaliation, defendant's motion is granted as set forth below and the complaint is dismissed in its entirety.

### BACKGROUND

Plaintiff Rosemary Urbano-Spencer was employed by defendant Starfish Family Services for approximately one year, from February 2004 until February 25, 2005. Starfish Family Services is a Michigan non-profit corporation that organizes and runs a variety of community programs. Plaintiff was the program director for defendant's 21st Century Community Learning Program ("21st Century Program"), a federally funded

program designed to help students meet state and local academic standards.  From October 2004 until the end of her employment with defendant plaintiff also ran defendant's "Kids Club" program.

Plaintiff began participating in a defined contributions plan ("plan") in the fall of 2004.  Under the plan, part of plaintiff's paycheck was withheld for deposit to a 403(b) account under administered by TIAA-CREF, and defendant was required to match those deposits.  In January 2005, plaintiff noticed that money had not been deposited into her account, as required by the plan, since November 2004. Plaintiff wrote defendant a letter asking for an explanation.  After receiving what plaintiff alleges was an inadequate response, she filed a complaint with the Department of Labor ("DOL") on January 5, 2005.  Plaintiff has testified that she informed her then-supervisor, Ms. Askew, of this complaint shortly thereafter.  Other participants in the retirement plan also expressed their concern to representatives of defendant, and it is not disputed by plaintiff that within several weeks, the missing funds (including accrued interest) had been forwarded to TIAA-CREF, the administrator of the Defined Contribution Plan at issue.

It was at roughly this same time that plaintiff's supervisor changed.  In February 2004, when plaintiff began working for defendant, her supervisor was Celia Washington.  In October, 2004, plaintiff assumed the duties for the defendant's "Kids Club" program in a cost-cutting reorganization.  In December 2004, as the result of further cost-cutting by defendant, Sheree Askew replaced Ms. Washington as plaintiff's supervisor.  Ms. Askew asserted at her deposition that when she began in the new position, she was unfamiliar with the 21st Century Program and the requirements that accompanied the

federal grants.  Ms. Askew further stated that by January 2005, after a month in the position and when she had better familiarized herself with the 21st Century Program and its requirements, she began noticing deficiencies in plaintiff's work performance.  Ms. Askew claims money was being spent in contravention of grant requirements, that the curriculum was not up to date, and that some of the policies and procedures required by the program's project narratives were absent.  That same month, Ms. Askew stated, she approached plaintiff, expressed her concerns, and plaintiff agreed to work on the issues.  Both Ms. Askew and Ms. Mitropoulos testified in their depositions concerning at least one conversation they had concerning plaintiff's performance in managing the 21st Century Program, and the ultimate decision to draft a Performance Improvement Plan ("PIP") to present to the plaintiff.

On February 25, 2005, Ms. Askew approached plaintiff with a PIP and requested her signature. Ms. Askew stated that she felt the PIP was necessary because many of the issues she discussed with plaintiff in January had not improved and new problems continued to surface.

The PIP is a two page document, which listed two areas plaintiff needed to improve in: job performance and negative attitude.  The job performance category included five specific issues: 1) failure to notify the schools when the program schedule changed, 2) failing to keep Ms. Askew informed of her work schedule, 3) sharing confidential information with other employees, 4) failure to maximize employee's time, and 5) scheduling staff meetings without informing Ms. Askew.  (Plaintiff's Brief in Opposition to Defendant's Motion For Summary Judgment, Exhibit 11).  Plaintiff contends that none of the complaints contained in the PIP was true.  Plaintiff told Ms.

Askew she believed the PIP was done in retaliation for her complaint to the DOL and refused to sign it.

Upon plaintiff's refusal to sign the PIP, Ms. Askew approached defendant's director of human resources, Elizabeth Mitropoulos, who also spoke with plaintiff regarding the PIP.  Plaintiff still refused to sign, indicating again that she believed the PIP was untrue and was done in retaliation for her DOL complaint.  Ms. Mitropoulos told plaintiff she would have to find out the repercussions when an employee would not sign a PIP and would get back with plaintiff by the end of the day.  She then met with DeWayne Wells, defendant's Chief Operations Officer, Ouida Cash, defendant's Chief Executive Officer, and Alexander Sebastian, defendant's Development and Communication Officer.  Ms. Mitropoulos stated at her deposition that she was informed that if an employee refused to sign a PIP, defendant would have no choice but to terminate that employee.

Ms. Mitropoulos stated she again met with plaintiff and told plaintiff that the company did not want to terminate her employment, but that if she did not sign the PIP they would be left with no choice.  Plaintiff acknowledged at her deposition that Ms. Mitropoulos stated she did not want to terminate the plaintiff's employment.  Plaintiff was given another opportunity to sign the PIP, refused, and was terminated.  At that time she was aware that by refusing to sign the PIP she would be terminated, but she maintains that her termination was a result of her complaint to the DOL.

Discovery has closed in this matter, and defendant now requests that the court enter summary judgment it its favor.  The court has considered the parties' briefs and submissions, and held oral argument on the motion.  Following oral argument, as

discussed on the record, counsel for defendant submitted the deposition transcripts of Sheree Askew and Elizabeth Mitropoulos, which the court has also considered in making its determination on the motion, as set forth below.

## STANDARD OF REVIEW

Federal Rule of Civil Procedure 56(c) empowers the court to render summary judgment "forthwith if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."  See Redding v. St. Eward, 241 F.3d 530, 532 (6th Cir. 2001).  The Supreme Court has affirmed the court's use of summary judgment as an integral part of the fair and efficient administration of justice.  The procedure is not a disfavored procedural shortcut.  Celotex Corp. v. Catrett, 477 U.S. 317, 327 (1986); see also Cox v. Kentucky Dept. of Transp., 53 F.3d 146, 149 (6th Cir. 1995).

The standard for determining whether summary judgment is appropriate is "'whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.'" Amway Distributors Benefits Ass'n v. Northfield Ins. Co., 323 F.3d 386, 390 (6th Cir. 2003) (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 251-52 (1986)). The evidence and all reasonable inferences therefrom must be construed in the light most favorable to the non-moving party.  Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986); Redding, 241 F.3d at 532 (6th Cir. 2001).  "[T]he mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that

there be no genuine issue of material fact." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986) (emphasis in original); see also National Satellite Sports, Inc. v. Eliadis, Inc., 253 F.3d 900, 907 (6th Cir. 2001).

If the movant establishes by use of the material specified in Rule 56(c) that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law, the opposing party must come forward with "specific facts showing that there is a genuine issue for trial." First Nat'l Bank v. Cities Serv. Co., 391 U.S. 253, 270 (1968); see also McLean v. 988011 Ontario, Ltd., 224 F.3d 797, 800 (6th Cir. 2000). Mere allegations or denials in the non-movant's pleadings will not meet this burden, nor will a mere scintilla of evidence supporting the non-moving party. Anderson, 477 U.S. at 248, 252. Rather, there must be evidence on which a jury could reasonably find for the non-movant. McLean, 224 F.3d at 800 (citing Anderson, 477 U.S. at 252).

## ANALYSIS

Plaintiff filed a one-count complaint, entitled "interference with protected rights." The paragraphs following that heading include the assertion that "Defendant terminated Plaintiff for the purpose of preventing Plaintiff from receiving full retirement benefits under Defendant's pension plan and in retaliation for her exercise of her right to inquire with Defendant about the contributions and complain to the Department of Labor."[1] Plaintiff alleges that defendant's actions in terminating plaintiff were "in direct violation of ERISA Section 510, 29 U.S.C. § 1140."

Section 510 of ERISA provides that

---

[1] Defendant addresses interference and retaliation claims under ERISA separately; however, in response, plaintiff confirms that her only claim is for illegal retaliation under ERISA § 510, so the court addresses the arguments accordingly.

6

> It shall be unlawful for any person to discharge, fine, suspend, expel, discipline, or discriminate against a participant or beneficiary for exercising any right to which he is entitled under the provisions of an employee benefit plan, this subchapter, section 1201 of this title, or the Welfare and Pension Plans Disclosure Act [29 U.S.C. § 301 et seq.], or for the purpose of interfering with the attainment of any right to which such participant may become entitled under the plan, this subchapter, or the Welfare and Pension Plans Disclosure Act.  It shall be unlawful for any person to discharge, fine, suspend, expel, or discriminate against any person because he has given information or has testified against any person because he has given information or has testified or is about to testify in any inquiry or proceeding relating to this chapter or the Welfare and Pension Plans Disclosure Act.  The provisions of section 1132 of this title shall be applicable in the enforcement of this section.

29 U.S.C. § 1140.  The parties agree that where there is no direct evidence of discriminatory intent, such as in this case, a three-step burden-shifting approach is applied in ERISA actions brought under 29 U.S.C. § 1140.  Humphreys v. Belaire Corp., 966 F.2d 1037, 1043 (6th Cir. 1992).  The plaintiff has the initial burden of establishing a *prima facie* case of retaliation, after which the burden shifts to the employer to show a non-discriminatory reason for the termination.  Humphreys, 966 F.2d at 1043. If the employer is able to do so, the plaintiff then has the opportunity to show that the employer's non-discriminatory reason was pretextual. Id.

A. Plaintiffs *prima facie* case

To establish a *prima facie* case, the plaintiff is required to show that: 1) the activity was protected by ERISA; 2) the employer engaged in prohibited conduct; and 3) there was a causal link between the employee's exercise of her right and her termination.  Townley v. Blue Cross Blue Shield of Michigan, 254 F.Supp.2d 661, 668 (E.D. Mich. 2003) is cited by the defendant for this assertion.[2]

---

[2]The court notes that, as plaintiff points out, the parties have stated the *prima facie* case somewhat differently. However, the case each party cites states the same

7

1. The activity was a protected one

There is no dispute over the fact that making a complaint to the DOL about missing funds is a protected activity under the ERISA statute.

2. The employer engaged in prohibited conduct

As to whether defendant engaged in prohibited conduct, plaintiff asserts this is satisfied both by the issuance of a PIP and termination of her employment. Defendants claim they did not engage in prohibited conduct, because issuance of a PIP is not adverse employment action, and termination of plaintiff for refusing to sign it was defendant's right as an at-will employer. Defendant cites to Agnew v. BASF Corp., 286 F.3d 307, 309-10 (6th Cir. 2002) for this proposition. In Agnew, the Sixth Circuit held that a PIP was not adverse employment action when it did not mention termination, did not create "intolerable" working conditions, and was not a constructive discharge. Nonetheless, because termination satisfies the requirement for adverse employment action under the ERISA statute, the court will consider this prong of plaintiff's *prima facie* case to be satisfied, and move to the issue of a causal link between plaintiff's complaint to the DOL and her termination.

3. Causal link between the protected activity and the adverse employment action

Here, the plaintiff must prove there was a casual link between the protected activity and the prohibited action. Plaintiff claims the short amount of time between the two, approximately five weeks[3], is sufficient to show a link. Defendants claim time alone

---

*prima facie* case, and it is the one the court will use.

[3] Defendant asserts the time period is closer to two months, but the court will accept plaintiff's portrayal of the facts for purposes of this motion.

8

in not sufficient but that it must be accompanied by other evidence. Both parties cite Nguyen v. Cleveland, 229 F.3d 559 (6th Cir. 2000), a Title VII case which held that a plaintiff must "proffer evidence sufficient to raise the inference that her protected activity was the likely reason for the adverse action " in order to establish a causal link. Id. at 565-66 (citing EEOC v. Avery Dennison Corp., 104 F.3d 858, 861 (6th Cir. 1997)).

Although the court in Nguyen stated, in dicta, that there may be a situation in which "evidence of proximity alone would be sufficient," that court pointed to no such case. Rather, the court found there was no causal link under the circumstances presented in that case, where there was no evidence proffered by the plaintiff "that could reasonably support an inference that the City's nonpromotion of him to the various position [sic] in question was in retaliation for his filing charges of discrimination with the EEOC." Id. at 567.

Plaintiff, in fact, does point to three "facts" in addition to her claim of temporal proximity. First, she asserts that prior to January 2005 there had been no complaints regarding her performance. In fact, plaintiff contends, Ms. Washington described her as an "excellent" employee. Second, plaintiff contends that defendant does not have an established policy of terminating employees for refusing to sign PIPs; rather, defendant deals with such issues on a case by case basis.[4] Third, at the time Ms. Askew presented plaintiff with the PIP[5], plaintiff stated her concern that it was in retaliation for the DOL complaint.

---

[4] For instance, at oral argument defense counsel knew of only one other instance in which the defendant had issued an employee a PIP and the employee had refused to sign, and believed that the employee had not been terminated.

[5] Which plaintiff claims was "unsubstantiated and false."

9

Nevertheless, the court finds that the evidence does not support a finding of a causal link between plaintiff's complaint to the DOL and the adverse employment actions taken by defendant.  Plaintiff was an at-will employee, terminated by defendant approximately one year after she commenced working.  It is not disputed by plaintiff that defendant had corrected the deficiency in the defined benefit plan weeks prior to terminating plaintiff.   She had received only one written performance evaluation from her first supervisor, Celia Washington, approximately 4-5 months before she was terminated, and prior to or contemporaneously with the reorganization in which she was assigned additional job duties.  Although in deposition plaintiff's first supervisor (whom the court notes is also a discharged employee of the defendant) may have stated that plaintiff's performance was "excellent," the written evaluation from October 11, 2004, was generally average to good.  Plaintiff's contentions based on Ms. Washington's testimony are therefore of no material value in raising an inference of a casual link between her complaint and her termination.

Furthermore, the court does not find any merit in plaintiff's contentions concerning the allegedly retaliatory PIP, and other employees' treatment vis-a-vis PIPs.  Whether or not defendant followed its internal policy in the issuance or execution of the PIP is not at issue here.  Plaintiff herself has testified that Ms. Mitropoulos indicated to her that she did not want to fire the plaintiff, and plaintiff has acknowledged that she was told if she signed the PIP, she would not be terminated.  It is the court's determination that plaintiff simply has pointed to no indirect evidence which might allow a reasonable fact-finder to determine that the adverse action suffered by the plaintiff was causally

related to plaintiff's complaint to the DOL.[6] Lastly, plaintiff's own perception that the requisite causative link exists in not enough to impute such a motive to the defendant. Thus, all plaintiff has remaining of her arguments is the temporal proximity of her complaint to the presentation of a PIP and her ultimate termination as evidence of causation. As in the cases of Hafford v. Seidner, 183 F.3d 506, 515 (6th Cir. 1999) (the court agreed with the lower court's decision that disciplinary actions spread out over time, between two to five months after employee complained to EEOC, was too "tenuous" a connection) and Cooper v. North Olmstead, 795 F.2d 1265, 1272 (6th Cir. 1986) (four months between discrimination complaint and discharge held not enough to raise inference of retaliation), cited by defendant for this proposition, this is simply not enough. Accepting plaintiff's version of the facts, discharge occurred six weeks after the complaint to the DOL, which is a shorter time period than either of the cases cited above. However, in the context of this case, where the contribution shortages had been quickly corrected, and plaintiff has pointed to absolutely no evidence of any ill will or motive on the part of defendant in response to her complaint, the court must determine that plaintiff has not established the required causal connection. Summary judgment will enter for defendant.

---

[6] Even if plaintiff had established her *prima facie* case, and the court had gone on to consider the remaining elements required for plaintiff's claim of improper retaliation, the court finds that plaintiff could not have persuaded the court that defendant's asserted reason for terminating plaintiff (i.e. failure to sign the PIP) was pretextual.

11

CONCLUSION

For the reasons stated above, defendant's motion for summary judgment is hereby GRANTED and the plaintiff's complaint is dismissed in its entirety.

                                    S/George Caram Steeh
                                    GEORGE CARAM STEEH
                                    UNITED STATES DISTRICT JUDGE

Dated: July 5, 2006

CERTIFICATE OF SERVICE

Copies of this Order were served on the attorneys of record on July 5, 2006, by electronic and/or ordinary mail.

                                    S/Josephine Chaffee
                                    Secretary/Deputy Clerk